IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MICHAEL JOHN PETCHULAT,**

    **Plaintiff,**

vs.                                                                                             No.  11cv0124 DJS

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's (Petchulat's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 13 ]**, filed June 25, 2011, and fully briefed on September 11, 2011.  On January 28, 2010, the Commissioner of Social Security issued a final decision denying Petchulat's claim for supplemental security income payments (SSI).  Petchulat seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED.**

### I.  Factual and Procedural Background

Petchulat, now fifty-three years old (D.O.B. February 21, 1958), filed his application for  supplemental security income payments on August 24, 2007, alleging disability since December 25, 1976,[1] due to degenerative disk disease,  post-traumatic stress disorder, and

---

[1] Petchulat cannot receive SSI payments for any period prior to the month after the month of application. 20 C.F.R. §416.335 ("When you file an application in the month that you meet

bipolar disorder versus schizophrenia. (Tr. 19). Petchulat has a G.E.D. and no past relevant work (Tr. 24). On January 28, 2010, the ALJ denied benefits, finding Petchulat was not disabled as he retained "the residual functional capacity (RFC) to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of light work activity which does not involve the general public, which involves only superficial contact with coworkers and supervisors, and which is limited to non-complex work." Tr. 24. The ALJ further found Petchulat's testimony was "not the least bit credible." Tr. 23.

On October 1 , 2010, the Appeals Council denied Petchulat's request for review of the ALJ's decision. Tr. 2. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Petchulat seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the

---

all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.").

relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  *Id.*

Petchulat contends the ALJ's mental RFC finding is legally erroneous and not supported by substantial evidence for the following reasons: (1) the ALJ erred in failing to evaluate Dr. Fink's diagnoses and RFC opinion; (2) the ALJ violated the treating physician rule and failed to adequately develop the record in his rejection of Dr. Gonzalez's opinion; and (3) the RFC finding is not based on any medical opinion evidence.  Petchulat also contends the ALJ's credibility finding is legally erroneous and not supported by substantial evidence.

**A.  Dr. Fink's Diagnosis and RFC Opinion**

Richard Fink, Ph.D., a psychologist and State agency consultant, evaluated Petchulat on October 18, 2007.  In his report, Dr. Fink noted that it was based on Wechsler Adult Intelligence Scale-III "with mental status done on October 18th."  Tr. 204.  Dr. Fink's report states, in relevant part:

> Mr. Petchulat reports almost no formal work experience.  He says he could never get a real job because "people are jerks" and says he always gets in arguments with his bosses or supervisors. He has done odd jobs like painting and yard work.
>
> \*\*   \*\*   \*\*   \*\*
>
> Mr. Petchulat reports some medical problems, but not much in the way of medical treatment.  He said that when he was a baby he was told that he was hospitalized because he had a tumor on his head.  He said he did, as a young child, have pneumonia a few times and has had heart pains which he says his sister caused

4

him. He reports having been sexually abused as a child by a Catholic Priest and says he has been in many accidents. It appears that he does not seek medical treatment. These include some car accidents, a bicycle accident where the whole front wheel collapsed and he fell over the handlebars. He said that he was beaten at least once in the Job Corps. He, as an adult, has not been in the hospital very much that he can recall. As a child he was on Ritalin for Attention-Deficit Disorder and is currently getting VALIUM. He said that he will not take "bipolar stuff" because he is afraid. He could not quite explain what he is afraid of. He said many of his siblings and aunts and uncles suffer from bipolar disorder and take medication. He is receiving outpatient treatment through a La Luz program in Santa Fe. He sees a counselor and a psychiatrist.

\*\* \*\* \*\* \*\*

It does appear that Mr. Petchulat is a 49 year-old man with a long history of marginal functioning. He had a chaotic childhood and may suffer from Attention-Deficit Disorder. He likely was also conduct disordered as a child. He currently has a personality disorder with borderline and antisocial features and possibly has an atypical form of bipolar disorder. He functions at about the low average range of intelligence.

Ability to understand and remember detailed or complex instructions is only mildly impaired. Ability for sustained concentration and task persistence is impaired by his personality type. He is not particularly interested in carrying out instructions or of concentrating. He likely could not work without supervision, but would chafe at supervision. Abilities for social interactions are impaired also by his personality style and general irritability. Abilities to adapt to changes in the work place, be aware of normal hazards and react appropriately is impaired by his impulsivity. Alcohol and drugs are not an issue at this time, by his report, but if he had ample money he likely would drink. Should he receive benefits, they probably should be handled by a more responsible person.

Tr. 206-207.

Petchulat contends the ALJ (1) failed to state whether Petchulat had a personality disorder and probable ADHD and (2) failed to state what weight, if any, he assigned to it. Hence, Petchulat argues the ALJ's failure to address Dr. Fink's diagnoses and opinion was legal error.

In his decision, the ALJ addressed Dr. Fink's diagnoses and opinion. The ALJ noted:

> During a consultative examination performed in October 2007 in connection with his current SSI application, he stated that he would not take "bipolar stuff" because he was "afraid," but he was unable to explain of what he was afraid and acknowledged that he had many relatives who took medication for diagnosed bipolar conditions. Notably, claimant also reported a significant history of alcohol abuse and indicated that he was not drinking at that time because he could not afford it. He further stated that if he could afford it, he would continue to drink, professing a love of this activity. In addition, he reported that he occasionally smoked marijuana.
>
> Upon formal mental status evaluation, the claimant was "marginally cooperative," tended to be vague and not too informative when asked direct questions," and gave a variable level of effort during testing. He was oriented times three, demonstrated an intact memory, was able to perform serial 7's and spell "world" correctly forward and backward, was able to repeat a five-word statement correctly, and was able to follow a three-step instruction. He also demonstrated abstract thinking and identified similarities between common items. Formal testing established that he functioned in the low average range of intelligence but the examiner opined that he may have an attention deficit/hyperactivity disorder, apparently based solely on the claimant's self-report that he had been diagnosed with, and treated for, that condition as a child. The examiner further opined that he had a personality disorder with borderline and antisocial features, as well as an atypical form of bipolar disorder, but specifically noted that the claimant had only mild impairment in this ability to understand and remember detailed or complex instructions, that he would likely chafe at supervision but likely could not work without it, and that his "personality style" impaired his ability for sustained concentration, task persistence, and ability to adapt to changes in the work place, to be aware of normal hazards and to react appropriately was impaired by impulsivity, which was apparently based on the claimant's reported history as no indication of this tendency was reported during the formal mental status evaluation.

Tr. 19-20. Although the ALJ cited to Dr. Fink's evaluation, he did not assign any weight to the opinion. There is no dispute that Dr. Fink is not a treating physician. However, the ALJ was still required to consider his opinion. *See* 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive."); SSR 96-5P, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored.").

In considering a medical opinion ,the ALJ must provide specific, legitimate reasons for rejecting it. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001). The regulations required the ALJ to consider several specific factors in weighing a medical opinion. See 20 C.F.R. § 416.927(d)(1)-(6). Specifically, §416.927(d) states:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

In this case, the ALJ failed to assign Dr. Fink's opinion any weight. Dr. Fink is a State agency expert. Under the regulations, Dr. Fink is considered a "nontreating source." *See* 20 C.F.R. §416.902. A nontreating source means "physician, psychologist, or other acceptable medical source who has examined [claimant] but does not have, or did not have, an ongoing treatment relationship" with the claimant. *Id.* This term includes an acceptable medical source who is a consultative examiner for the agency, when the consultative examiner is not a claimant's treating source. *Id.* An ALJ must give "more weight to the opinion of a source who has examined [claimant] than to a source who has not examined [claimant]." *See* 20 C.F.R. §416.927(d)(1). Additionally, the ALJ generally must give more weight to a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. *See* 20 C.F.R. §416.927(d)(5). On remand, the ALJ should reconsider Dr. Fink's opinion and provide an explanation for rejecting it.

**B. Dr. Gonzalez's Opinion**

Petchulat contends the ALJ violated the treating physician rule and failed to adequately develop the record. Petchulat contends Dr. Gonzalez is his treating psychiatrist and thus the regulations required the ALJ to accord it controlling weight.

7

Dr. Gonzalez submitted a "Psychiatric-Psychological Source Statement of Ability to do Work-Related Activities on **February 2008.** Dr. Gonzalez opined Petchulat was **not limited** in his ability to understand and remember (1) very short and simple instructions and (2) detailed or complex instructions. Tr. 251. Dr. Gonzalez further found Petchulat was **not limited** in his ability to sustain concentration and task persistence, and opined Petchulat had (1) the ability to carry out instructions, (2) the ability to attend and concentrate and (3) the ability to work without supervision. Tr. 251-52.

However, Dr. Gonzalez found Petchulat was **markedly limited** in the area of social interactions and adaptation. Dr. Gonzalez opined Petchulat was markedly limited in his ability to interact with the public, in his ability to interact with coworkers, and in his ability to interact with supervisors. Dr. Gonzalez noted the medical basis for his limitations as "paranoia, thinks people don't like him, is highly suspicious of people." Tr. 252. Dr. Gonzalez also opined Petchlat was markedly limited in his ability to adapt to changes in the workplace and moderately limited in his ability to use public transportation or travel to unfamiliar places. Dr. Gonzalez noted the medical basis for his limitations as "paranoid with people he doesn't know, has a hard time adapting to any changes." Tr. 252.

On **January 13, 2009**, Dr. Gonzalez completed a Psychiatric/Psychological Impairment Questionnaire. Tr. 291-98. Dr. Gonzalez noted he had been treating Petchulat on a monthly and prn (as needed) basis from May 8, 2007 to November 11, 2008. Tr. 291. Dr. Gonzalez diagnosed Petchulat as suffering from schizophrenia and post traumatic stress disorder. *Id.* Dr. Gonzalez's prognosis for Petchulat was "guarded." *Id.* Dr. Gonzalez listed the following clinical findings demonstrating his diagnosis: (1) sleep disturbance; (2)

8

emotional lability; (3) delusions or hallucinations; (4) recurrent panic attacks; (5) paranoia or inappropriate suspiciousness; (6) feelings of guilt/worthlessness; (7) difficulty thinking or concentrating; (8) oddities of thought, perception, speech or behavior; (9) perceptual disturbances; (10) illogical thinking or loosening of associations; (11) decreased energy; (12) generalized persistent anxiety; and (13) hostility and irritability. Tr. 292. Dr. Gonzalez noted "patient's paranoid beliefs are reinforced by his victimization as a child." *Id.* Dr. Gonzalez also noted he performed a mental status exam which revealed paranoid thinking, distractibility, impaired memory and concentration, difficulty with linear thought processes. Tr. 293. Dr. Gonzalez listed Petchulat's primary symptoms as paranoia, hallucinations, nightmares, anxiety, and inability to relate appropriately with others. Dr. Gonzalez listed as "more frequent an/or severe" the following clinical findings or symptoms as paranoia, nightmares, anxiety, inability to concentrate, angry outbursts. *Id.*

The questionnaire also required Dr. Gonzalez to rate several mental activities within the context of Petchulat's capacity to sustain the particular activity over "a normal workday and workweek, on an ongoing basis in a competitive work environment." Tr. 293. Dr. Gonzalez rated the following mental activities as "**markedly**" limited: (1) the ability to remember locations and work-like procedures; (2) the ability to understand and remember detailed instructions; (3) the ability to carry out detailed instructions; (4) the ability to maintain attention and concentration for extended periods; (5) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (6) the ability to sustain ordinary routine without supervision; (7) the ability to work in coordination with or proximity to others without being distracted by them; (8) the ability to complete a

9

normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (9) the ability to interact appropriately with the general public; (10) the ability to accept instructions and respond appropriately to criticism from supervisors; (11) the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (12) the ability to respond appropriately to changes in the work setting. Tr. 294-96. Dr. Gonzalez further noted Petchulat experienced episodes of deterioration or decompensation in work or work like settings. Tr. 296. Dr. Gonzalez listed Petchulat's medications as Seroquel XR 300 mg one at bedtime and Valium 10 mg one as needed. Dr. Gonzalez noted that Petchulat was "paranoid about taking antipsychotic medications. Significantly, Dr. Gonzalez noted that Petchulat was not a malingerer and did not have a low IQ or reduced intellectual functioning. Tr. 297. Due to paranoia, Dr. Gonzalez opined Petchulat was incapable of even low work stress.

> In his decision, the ALJ noted:
>
> In February 2008, the claimant's treating psychiatrist completed a form indicating that the claimant had marked limitations in his ability to engage in social interactions due to paranoia, a belief that people did not like him, and a high degree of suspicion about people. This doctor further opined that he was markedly limited in this ability to adapt to changes in the work place and that he was moderately limited in his ability to use public transportation or to travel to unfamiliar places due to his paranoia and the fact that he had a "hard time adapting to any changes." Notably, however, this doctor also stated that, to the doctor's knowledge, the claimant did not have a problem with alcohol or other substance of abuse.
>
> The record also contains a second form competed by this same treating source in January 2009, at which time the doctor reported having treated the claimant between May 2007 and November 2008. Notably, however, the record fails to reflect any actual treatment notes signed by this doctor after May 8, 2007. The doctor further reported diagnoses of schizophrenia and post-traumatic stress

>disorder, although there is no supporting treatment note indicating that the claimant was ever diagnosed with, or demonstrated symptoms consistent with post-traumatic stress disorder despite a self-reported history of childhood trauma. The psychiatrist specifically cited such symptoms as paranoid thinking, distractibility, impaired memory and concentration, "difficulty with linear thought processes," hallucinations, nightmares, anxiety and inability to relate appropriately with others, but the treatment notes from this source and all other treating /examining sources fail to corroborate that the claimant has demonstrate significant memory or concentration deficits, impaired thought processes, hallucinations, nightmares and/or significant anxiety. In addition, this doctor indicated that the claimant had multiple marked limitations in his ability to understand and remember instructions, to sustain concentration and persistence, to interact socially, and to adapt to changes.
>
>In addition, the claimant's treating psychiatrist opined in the second opinion form that he is markedly limited in his ability to perform basic work-related activities and that Seroquel and Valium have been prescribed but that he is paranoid about taking antipsychotic medication. The doctor further stated that he is "very paranoid," that he is incapable of performing even "low stress" jobs, and that he could be expected to be absent from work more than 3 times per month. I find that the failure of the claimant's psychiatrist to take his substance abuse history into account when assessing the claimant's ability to perform work-related activities severely undermines the validity of the doctor's assessments. I further find that these assessments are not corroborated by objective clinical evidence in this doctor's own treatment notes or in the records of other treating and/or examining sources. In addition, the record does not establish that this psychiatrist evaluated the claimant regularly (although other staff members apparently saw him on a regular basis), that the doctor was aware of the claimant's history of substance abuse, that the doctor adequately considered his refusal to take prescribed medication in light of his reported inability to articulate why he was unwilling to take it, or that this doctor has any particular understanding of the Social Security disability programs and their evidentiary requirements. Therefore, I afforded these treating source opinions as to the severity of the claimant's mental condition little weight in the determination of disability in this case.

Tr. 20-21.

Dr. Gonzales is considered Petchulat's treating physician. A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. 20 C.F.R. §416.927(a)(2). Generally, the ALJ must "give controlling

11

weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record."*Drapeau,*, 255 F.3d at 1213.  "When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision." *Id.*  However, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his . . . own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002)(quotations and italics omitted).  Moreover, an ALJ may not substitute his own opinion for medical opinion. *Sisco*, 10 F.3d at 744.

"Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§416.927]." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4).

In this case, the ALJ set forth his reasons for affording little weight to Dr. Gonzalez's opinion.  However, the ALJ noted that Dr. Gonzalez had been treating Petchulat from May 2007 to November 2008, yet there were no "actual treatment notes signed by this doctor after May 8, 2007." Tr. 20.  It is not clear from the ALJ's decision whether he determined Dr. Gonzalez had only seen Petachulat once or whether Dr. Gonzalez's medical notes were not included in the record.  Because the ALJ placed significant importance on this factor, he should have inquired at the administrative hearing regarding this matter.

The ALJ had a duty to fully and fairly develop the record as to this material issue. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Consistent with this duty,

§416.912(d) states that the Commissioner will make "every reasonable effort" to help a claimant get records from his or her medical sources.  The Court will remand this matter to allow the ALJ to request Dr. Gonzalez's medical notes.

In his decision, the ALJ discussed Petchulat's refusal to receive medication for his mental impairments.  However, the ALJ did not further develop Petchulat's failure to follow prescribed treatment as a basis for denying benefits.  *See* Social Security Ruling 82-59, 1982 WL 31384 (Failure to Follow Prescribed Treatment); *see*, *e.g., Thompson*, 987 F.2d at 1490.  Nonetheless, it is a legitimate avenue of inquiry on remand.  Finally, on remand, the ALJ should redetermine Petchulat's RFC and credibility.

A judgment in accordance with this Memorandum Opinion and Order shall be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**